UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JOEL DANIEL MAXFIELD,

        Plaintiff,

    v.

CITY OF ALBANY, an Oregon municipal
Corporation; ERIN BAGLEY, Officer APD;
LEE PHELPS, Officer APD; PETER SHOEBE,
Officer APD; TREVOR EATON, Officer APD;
CURTIS BELL, Sargeant APD,

        Defendants.

Case No. 6:24-cv-02000-AP

**OPINION AND ORDER**

POTTER, Magistrate Judge.

Plaintiff, a self-represented adult in custody (AIC), brought this action pursuant to 42

U.S.C. § 1983 alleging that City of Albany police officers exhibited deliberate indifference to his

health and safety in violation of the Fourteenth Amendment. The parties now move for summary

**1  - OPINION AND ORDER**

judgment and have consented to final disposition by the undersigned magistrate judge. *See* Fed. R. Civ. P. 73. For the reasons explained below, Plaintiff fails to raise a genuine issue of material fact to defeat summary judgment and Defendants' motion is GRANTED.

BACKGROUND

Plaintiff's claims arise from his arrest and detention by City of Albany police officers during the evening of September 5, 2023. Shortly before 5:30 p.m., Officer Bagley responded to a call reporting that a man was "slumped over in his vehicle" in a Walmart parking lot. Bagley Decl. ¶ 6 & Exs. 117-18 (patrol car and bodycam video) (ECF Nos. 31). Officer Bagley approached Plaintiff's pickup truck and noted that he was "slumped over in the seat and sweating profusely" and appeared to be breathing. *Id.* ¶ 7. Officer Bagley believed that Plaintiff was in an "opium-induced sleep" and called for backup officers. *Id.*

Officers Shobe and Phelps arrived on the scene at approximately 5:29 p.m. Shobe Decl. ¶ 8 (ECF No. 30); Phelps Decl. ¶ 6 (ECF No. 29). Officer Phelps recognized Plaintiff and informed Officer Bagley that Plaintiff was wanted for suspected forgery offenses. Bagley Decl. ¶ 7; Phelps Decl. ¶ 7. Officer Phelps also noticed that a folder containing paperwork was lying on Plaintiff's lap. *Id.*

Officer Bagley knocked on the driver's side window of Plaintiff's vehicle, and Plaintiff awoke, stretched, and attempted to start his truck. Bagley Decl. ¶ 8 & Ex. 118. Officer Bagley opened the driver's side door, removed Plaintiff from the vehicle, and placed him in handcuffs. *Id.* Officer Bagley read Plaintiff his *Miranda* rights and asked for consent to search his person, and Plaintiff consented. *Id.* Plaintiff walked to the front of Officer Bagley's patrol vehicle without assistance and stood while Officer Bagley performed a pat-down search and emptied Plaintiff's pockets. *Id.*; *see also* Phelps Decl. Ex. 107 (bodycam video).

**2    - OPINION AND ORDER**

The officers discovered a checkbook belonging to another person, several forged checks, and two plastic baggies containing "presumptive positive fentanyl and methamphetamine" on Plaintiff's person. Smith Decl. Ex. 122 at 2 (ECF No. 33-1). Officer Bagley contacted the owner of one checking account who confirmed that the check was forged. *Id.*

After conducting the pat-down search, Officer Bagley placed Plaintiff in the back seat of his patrol vehicle and helped Plaintiff drink a sixteen-ounce bottle of water. Bagley Decl. ¶ 9 & Exs. 117-18. Officer Bagley then closed the door to the vehicle, leaving the rear passenger window open a few inches. *Id.*

At approximately 5:40 p.m., Officers Shobe and Phelps approached Officer Bagley's patrol vehicle and opened one of the back doors to speak with Plaintiff. Shobe Decl. ¶ 10 & Ex. 111 (bodycam video); Phelps Decl. ¶ 8-9 & Ex. 107. Plaintiff appeared drowsy, but he spoke to the officers about waiving his right to have an attorney present and giving consent to search his truck. Shobe Decl. ¶ 10. During this conversation, Officer Phelps brought Plaintiff additional water at his request. Phelps Decl. ¶ 8 & Ex. 107. Plaintiff agreed to speak to the officers without an attorney and stepped out of the patrol vehicle to review and sign the Attorney Waiver form. Shobe Decl. ¶ 10 & Ex. 111; Phelps Decl. 8 & Ex. 107. Plaintiff stood and returned to the back seat of the patrol vehicle without difficulty or assistance. *Id.*; Eaton Decl. Ex. 104 (dashcam video) (ECF No. 28). Plaintiff eventually refused to give consent to search his vehicle.

Officer Eaton arrived at the scene at approximately 5:35 p.m. as the officer in charge, and Officer Bell arrived at approximately 6:15 p.m. Eaton Decl. ¶¶ 8-9; Bell Decl. ¶ 3 (ECF No. 32). At approximately 6:20 p.m., Officer Eaton applied for a search warrant to search Plaintiff's vehicle, and a Linn County Circuit Court judge signed the warrant at approximately 7:40 p.m. Eaton Decl. ¶ 10 & Ex. 102 at 50. Officer Bell left the scene during this time, after determining

**3    - OPINION AND ORDER**

that his assistance was not required. Bell Decl. ¶¶ 3, 5. Officers Phelps and Shobe executed the search warrant and seized cell phones, laptops, printer ink, check stock paper, forged Oregon identification cards, forged checks, and several pieces of mail from Plaintiff's truck. Smith Decl. Ex. 122 at 2.

Approximately 6:25 p.m., Officer Bagley checked on Plaintiff and noticed that he appeared to be falling asleep. Bagley Decl. ¶ 11 & Exs. 117-18. Officer Bagley opened the door, asked if Plaintiff was cool enough, and said that he did not want Plaintiff falling asleep or passing out in the patrol vehicle. *Id.* Plaintiff indicated that he needed more air and water. Officer Bagley rolled down another window in the vehicle and helped Plaintiff drink a second bottle of water. *Id.*

At approximately 6:40 p.m. Plaintiff was moved from Officer Bagley's patrol vehicle to Officer Phelps's patrol vehicle and given additional water. Eaton Decl. ¶ 11 & Ex. 105 (dashcam video); Bagley Decl. Exs. 117-18; Phelps Decl. Ex. 107. As Officers Phelps and Shobe searched Plaintiff's vehicle, Officer Eaton approached Plaintiff and spoke with him for approximately one-half hour. Eaton Decl. ¶¶ 11-12 & Ex. 103 (bodycam video). Plaintiff answered Officer Eaton's questions, discussed his experiences with fentanyl use and overdoses, and explained how he used magnetic ink to print forged checks. *Id.* ¶ 12 & Ex. 103. During their conversation, Officer Phelps brought Plaintiff his cell phone, and Plaintiff called his uncle and asked him to retrieve Plaintiff's truck. *Id.* Ex. 103; Phelps Decl. ¶ 11 & Ex. 108 (bodycam video).

At approximately 8:30 p.m., Officer Shobe transported Plaintiff to the Linn County Jail for booking. Eaton Decl. ¶ 16; Phelps Decl. Ex. 109 (bodycam video). Plaintiff remained in custody until his release on September 26, 2023. Smith Decl. ¶ 2. During his incarceration,

**4    - OPINION AND ORDER**

Plaintiff did not request medical treatment relating to a drug overdose. *Id.* Ex. 122 at 6-11, Ex. 124 at 6-8.

On December 2, 2024, Plaintiff filed this action against the City of Albany and Officers Bagley, Phelps, Shobe, Eaton, and Bell. Plaintiff alleges that Defendants violated his federal constitution rights by failing to take steps to "abate the risk of overdose" and leaving Plaintiff in a patrol car without medical attention for over three hours. Defendants now move for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendants must present evidence of record, together with affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. If Defendants meet this burden, the burden shifts to Plaintiff to demonstrate the existence of a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see* Fed. R. Civ. P. 56(c)(1).

The Court must construe the evidence and all reasonable inferences in favor of Plaintiff, the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation and quotation marks omitted). Because Plaintiff is self-represented, the Court construes his filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Walker v. Beard*, 789

**5    - OPINION AND ORDER**

F.3d 1125, 1133 (9th Cir. 2015). However, Plaintiff is not relieved of the "obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, No. CV 10-5862-GAF (RNB), 2011 WL 13142131, at *1 (C.D. Cal. Dec. 5, 2011).

## DISCUSSION

Plaintiff contends that Defendants exhibited deliberate indifference to his health and safety by failing to summon medical personnel or provide medical treatment for a "potential" overdose while he was detained in the Albany Walmart parking lot. *See D'Braunstein v. California Highway Patrol*, 131 F.4th 764, 768 (9th Cir. 2025) ("The Constitution has been interpreted to require state actors to provide adequate medical care in certain circumstances when the government is confining a person or otherwise restricting his liberty.").

Plaintiff was a detainee during the incident in question, and his claims are properly evaluated under the Fourteenth Amendment. *Id.* at 769 (explaining that "Fourteenth Amendment precedents bear on our analysis" of claims alleging the lack of medical care after an arrest "and form part of the body of law on which officers and courts may reasonably rely."); *cf. Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006) (analyzing a claim for lack of medical care under the Fourth Amendment when the detainee was injured during the course of an arrest). An objective standard applies to constitutional claims of deliberate indifference brought under the Fourteenth Amendment. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). Under this standard, Plaintiff must show:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment]; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the

**6    - OPINION AND ORDER**

consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021) (quoting *Gordon*, 888 F.3d at 1125). "To satisfy the third element, the plaintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* Ultimately, the "standard is one of 'objective deliberate indifference' in the face of a 'substantial risk' of the plaintiff 'suffering serious harm.'" *D'Braunstein*, 131 F.4th at 769 (quoting *Gordon*, 888 F.3d at 1125).

Plaintiff presents no evidence to meet this standard. Granted, Defendants did not provide Plaintiff with medical treatment or call medical personnel during his arrest and initial detention on September 5, 2023. However, although Plaintiff appeared drowsy, no evidence suggests that Plaintiff was in medical distress, experienced an overdose, or otherwise required medical treatment. It is undisputed that Plaintiff awakened easily and responded appropriately to officers' questions, walked and stood without assistance, made a telephone call to a relative, and asserted his rights and declined consent to search his vehicle. *See* Bagley Decl. ¶¶ 8-9, 11, 14 & Exs. 117-18; Eaton Decl. ¶¶ 11-13 & Exs. 103-05; Shobe Decl. ¶¶ 11-14 & Ex. 111; Phelps Decl. 7-14 & Exs. 107-08.

Further, officers checked on Plaintiff periodically and brought him water on several occasions. *Id.* Plaintiff was breathing normally and did not exhibit symptoms of an overdose, such as difficulty waking up, abnormal breathing or snoring, bluish or pale lips and fingernails, pale or clammy skin, vomiting, or foaming at the mouth. *Id.*; Defs.' Mot. Summ. J. at 10 (citing Oregon Health Authority, "Reduce Your Risk of Overdose/Signs of an opioid overdose," at https://www.oregon.gov/oha/ph/preventionwellness/substanceuse/opioids/pages/fentanylfacts.aspx); *see also* Matthews Decl. Ex. 125 at 12 (ECF No. 34-1) (Plaintiff's deposition testimony

7    - OPINION AND ORDER

describing symptoms of an overdose). Nothing about Plaintiff's appearance, demeanor, or conduct would have caused a reasonable police officer to believe that Plaintiff required medical attention. *See D'Braunstein*, 131 F.4th at 769 (finding that an officer was not entitled to qualified immunity against claims alleging the failure to provide medical care when the plaintiff, who had suffered a stroke, "was disoriented, sweating profusely, had poor balance, his pupils were constricted, and his speech was slurred and extremely slow" and "had difficulty answering standard questions and could not perform the field sobriety tests as directed").

Further, Plaintiff did not request medical treatment, aside from asking that officers allow him to take a prescription medication, Subutex, that Plaintiff admitted was not prescribed to him. Phelps Decl. ¶ 9; Shobe Decl. ¶¶ 11, 15; Matthews Decl. Ex. 125 at 30. Plaintiff explained that he needed to take the medication to ward off or diminish withdrawal symptoms he expected to experience as a result of his fentanyl use. Phelps Decl. ¶ 9. Officer Phelps contacted a sergeant to confirm City of Albany Police Department policies concerning the administration of prescription medication, and Officer Phelps informed Plaintiff that he could not be provided with Subutex under the circumstances. *Id.* Aside from that request, Plaintiff did not seek medical treatment or express concern about an overdose before or after he was booked into the Linn County Jail. *See* Eaton Decl. ¶ 14; Phelps Decl. ¶ 15; Shobe Decl. ¶ 15; Bagley Decl. ¶ 15. Likewise, during his deposition, Plaintiff admitted that he never experienced an actual overdose on or after September 5, 2023. Matthews Decl. Ex. 125 at 32, 34; *see also* Eaton Decl. ¶ 14; Shobe Decl. ¶ 11-13; Phelps Decl. ¶ 9. Given this record, Defendants' alleged failure to summon medical personnel was not objectively unreasonable. *D'Braunstein*, 131 F.4th at 769-70.

In response to Defendants' motion, Plaintiff argues that his Complaint alleges sufficient facts to state a claim under the Fourteenth Amendment and asserts conclusory and unsupported

**8    - OPINION AND ORDER**

allegations that Defendants tampered with bodycam footage.[1] However, as the Court advised, Plaintiff cannot rely on the allegations in his Complaint to defeat summary judgment. *See* Summ. J. Advice Notice (ECF No. 36). Plaintiff must produce admissible evidence suggesting that Defendants recklessly disregarded a substantial risk to Plaintiff's health and safety and that their conduct was objectively unreasonable under the circumstances. Plaintiff failed to do so.

In fact, Plaintiff admitted during his deposition that he did not suffer actual harm arising from the lack of medical attention during his arrest and detention. Matthews Decl. Ex. 125 at 28-31. Plaintiff instead expressed dismay that officers did not call medical providers to ensure he "was okay" and complained that they arrested him and pursued a criminal investigation. *Id.* Ex. 125 at 32-33, 38. Even if the named officers failed to express adequate concern over Plaintiff's well-being, that failure does not arise to the level of deliberate indifference in violation of the Fourteenth Amendment.

In sum, Plaintiff presents no evidence that any of the officers' conduct placed Plaintiff "at substantial risk of suffering serious harm" or caused him any harm. *Sandoval*, 985 F.3d at 669. Accordingly, Plaintiff cannot sustain his Fourteenth Amendment claims, and all Defendants, including the City of Albany, are entitled to summary judgment. *See Tatum*, 441 F.3d at 1100 (finding that, "[a]bsent a constitutional deprivation," a municipality cannot be held liable under § 1983).

---

[1] Plaintiff's response also asserts allegations regarding the validity of his arrest. However, Plaintiff's Complaint did not challenge his arrest or assert the lack of probable cause, and Plaintiff cannot allege such claims in a response to a motion for summary judgment. Moreover, Plaintiff pled guilty to charges of Aggravated Identity Theft arising from his arrest on September 5, 2023, and any claim for damages that implicitly challenges the validity of his convictions is barred under the *Heck* doctrine. *State v. Maxfield*, CR No. 43294; *Heck v. Humphrey*, 512 U.S. 477, 487-88 (1994) (barring § 1983 claims that implicate the validity of a conviction unless the conviction has been reversed or vacated).

**9    - OPINION AND ORDER**

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 27) is GRANTED and this action is DISMISSED.

IT IS SO ORDERED.

DATED this 21st day of May, 2026.

/s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge

10    - OPINION AND ORDER